UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case Nos. 1:01-cr-156-JMS-TAB-02, 1:02-cr-14-JMS-MJD-01 |
| v. | ORDER ON MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| MATHEW DEWAYNE SCHOONOVER | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:01-cr-00156-JMS-TAB-02 |
| v. ) | No. 1:02-cr-00014-JMS-MJD-01 |
| ) | |
| MATHEW DEWAYNE SCHOONOVER, ) | |
| ) | |
| Defendant. ) | |

## ORDER

In each of the above-captioned cases, Defendant Matthew Dewayne Schoonover has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 17 in Case No. 1:01-cr-156-JMS-TAB-02; Dkts. 7, 22 in Case No. 1:02-cr-14-JMS-MJD-01.[1] Mr. Schoonover seeks immediate release from incarceration. Dkt. 22 at 1. For the reasons explained below, his motions are **DENIED**.

**I.  Background**

Over the course of a month in 2001, Mr. Schoonover and his brother (Daniel Schoonover) committed three bank robberies.[2] Dkt. 27-1 at 4–7. During one of them, Mr. Schoonover brandished a gun and threatened tellers. *Id.* After the last robbery, Mr. Schoonover and his brother led police on a chase. *Id.* Their car got stuck in a cornfield, so they got out and ran. *Id.* They approached a house and tried to buy a car with the cash they had stolen, but the person they

---

[1] Mr. Schoonover made nearly identical filings in each of the above-captioned cases. For ease of reference, the Court cites only to docket entries in 1:02-cr-14-JMS-MJD-02 for the remainder of this Order.
[2] The facts in this paragraph are drawn from the Presentence Investigation Report. The United States relied on this statement of facts in responding to Mr. Schoonover's motions for compassionate release, and Mr. Schoonover did not object to its accuracy in his reply.

approached called the police. *Id.* When the police came, the brothers were in the car they had tried to buy. *Id.* Mr. Schoonover's brother accelerated and tried to run over the police officers. *Id.* Police shot out the tires of the car, so the brothers exited the car and ran. *Id.* The brothers were then separated, and Mr. Schoonover approached another home nearby and asked the resident to give him a ride in exchange for cash. *Id.* The resident refused and called the police. *Id.* Police arrived and found Mr. Schoonover standing next to a vehicle. *Id.* They ordered him to surrender, which he did. *Id.* Mr. Schoonover laid his semiautomatic handgun on the ground and was taken into custody. *Id.*

Mr. Schoonover ultimately signed a binding plea deal and agreed to plead guilty to: two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of use of a firearm in the commission of a federal felony offense, in violation of 18 U.S.C. § 924(c), in *United States v. Schoonover*, No. 1:01-cr-00156-JMS-TAB-02; and one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), in *United States v. Schoonover*, No. 1:02-cr-00014-JMS-MJD-01. *United States v. Schoonover*, No. 1:01-cr-00156-JMS-TAB-02, dkt. 32; *United States v. Schoonover*, No. 1:02-cr-00014-JMS-MJD-01, dkt. 8. In accordance with the plea agreement, Mr. Schoonover received a sentence of 300 months of imprisonment, representing concurrent 216-month sentences for the armed robbery counts and a consecutive sentence of 84 months for the § 924 count. *Id.*

Mr. Schoonover has been in custody since July 2001—about 20 years. The BOP lists Mr. Schoonover's anticipated release date (with good-time credits included) as December 21, 2022. That is, with good-time credits included, Mr. Schoonover has served more than 90% of his sentence.

Mr. Schoonover is 42 years old. He is currently incarcerated at USP Marion in Marion, Illinois. As of July 9, 2021, the BOP reports that no inmates or staff members at USP Marion have active cases of COVID-19; it also reports that 718 inmates at USP Marion have recovered from COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited July 9, 2021). The BOP also reports that 140 staff members and 828 inmates at USP Marion have been fully inoculated against COVID-19. *Id.* Approximately 66% of the inmate population at USP Marion has been fully inoculated. *Id.*; https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of July 1, 2021, the BOP reports that there are 1245 inmates total at USP Marion and the camp at Marion).

Mr. Schoonover filed a pro se motion for compassionate release. Dkt. 7. The Court appointed counsel, dkt. 8, and appointed counsel filed an amended motion for compassionate release, dkt. 22. The United States filed an opposition to the motion, dkt. 27, and Mr. Schoonover filed a reply, dkt. 28. At the Court's direction, the United States supplemented its response and informed the Court that Mr. Schoonover had received his first dose of the COVID-19 vaccine. Dkt. 32. Mr. Schoonover filed a reply and confirmed that he had received his second vaccine dose but argued that his request for compassionate release nevertheless remains viable. Dkt. 47. Thus, Mr. Schoonover's motions for compassionate release are ripe for review.

## II.     Discussion

Mr. Schoonover seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 7, 22. Specifically, he contends that his underlying medical conditions (hypothyroidism, kidney issues, being overweight and being a former smoker) put him at increased risk of experiencing severe symptoms if he contracts COVID-19 and that the BOP cannot protect him from contracting the virus, thereby creating extraordinary

4

and compelling reasons warranting release. *Id.* He also argues that he would not be a danger to the community if released and that the sentencing factors in 18 U.S.C. § 3553(a) favor release. In response, the United States argues that Mr. Schoonover has not established extraordinary and compelling reasons for release; that he would pose a danger to the community if released; and that the factors under § 3553(a) do not favor release. Dkt. 27.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[3] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger

---

[3] The United States does not argue that Mr. Schoonover failed to exhaust administrative remedies as required by § 3582(c)(1)(A).

> > to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or

registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety

of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

Mr. Schoonover does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case.[4]

Mr. Schoonover claims that extraordinary and compelling reasons warrant a sentence reduction in this case because he has several medical conditions (including hypothyroidism, kidney issues,[5] being overweight and being a former smoker) that increase his risk of experiencing severe COVID-19 symptoms. Dkts. 7, 22. The CDC (Centers for Disease Control) recognizes that having chronic kidney disease of any stage, being overweight and being a former smoker can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 9, 2021). However, Mr. Schoonover has now been fully inoculated against COVID-19. *See* dkts. 44, 47 at 1 (showing that Mr. Schoonover received the first dose of the Pfizer COVID-19 vaccine on April 6, 2021, and the second of two doses of the Pfizer COVID-19 vaccine on May 27, 2021). Although no vaccine is perfect, the CDC has recognized that vaccines currently approved for use in the United States are effective at preventing COVID-19 and that large-scale clinical trials found that

---

[4] In keeping with the Seventh Circuit's instruction in *Gunn*, 980 F.3d at 1180–81, the Court would typically consider the rationale provided by Mr. Schoonover's warden in denying Mr. Schoonover's administrative request for relief. However, Mr. Schooner submitted his administrative remedy to the warden in August 2020 and has not yet received a response. Dkt. 22 at 8; dkt. 22-2. Thus, there is no response from the warden for this Court to consider in its analysis.

[5] The exact nature of Mr. Schoonover's "kidney issues" is unclear. *See* dkt. 7 at 6 (Mr. Schoonover's pro se motion identifying kidney issues as a condition); dkt. 22-3 (BOP medical records listing "abnormal kidney function study" as "resolved"). Nevertheless, the Court will assume his "kidney issues" qualify as chronic kidney disease for purposes of this motion.

COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 9, 2021). Mr. Schoonover's speculation that he may not be protected because vaccine trial participants may not have had the same underlying health conditions as he does, or whether the immunity from the vaccines lasts beyond 6 months, is unpersuasive. This Court has routinely looked to the CDC for guidance during this pandemic, and the CDC states that vaccine effectiveness studies provide a growing body of evidence that mRNA COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings. *Id.* These studies show that the risk of COVID-19, including severe illness, among people who are fully vaccinated is reduced by 90 percent or more. *Id.*

Mr. Schoonover bears the burden of establishing "extraordinary and compelling reasons" that warrant a sentence reduction. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). With the latest information from the CDC suggesting that being fully vaccinated significantly reduces an individual's risk of getting seriously ill from COVID-19 in real-world conditions, and there being no active COVID-19 cases at USP Marion, the Court declines to exercise its discretion to find that the risk Mr. Schoonover faces from the COVID-pandemic represents an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 at 10 (S.D. Ind. Feb. 16, 2021) (declining to find extraordinary and compelling circumstances based on risk from COVID-19 pandemic where defendant had received both doses of Pfizer COVID-19 vaccine, even though she had conditions that could increase her risk of experiencing severe symptoms from the virus); *United States v. Harrison*, No. 4:16-CR-40073-SLD, 2021 WL 2021440, at *2 (C.D. Ill. May 20, 2021) (same).

Even if Mr. Schoonover had shown an extraordinary and compelling reason warranting a sentence reduction, however, his motion must be denied because the Court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Schoonover's request for compassionate release. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The Court will address those factors that are applicable to Mr. Schoonover's motion.

Here, Mr. Schoonover suffers from several medical conditions that increase his risk of experiencing severe symptoms if he contracts COVID-19. While USP Marion experienced a significant outbreak of COVID-19, the BOP's efforts to control the virus among the inmate population appear to be having some success, as no inmates or staff members currently suffer from an active case of COVID-19. Moreover, Mr. Schoonover has now been fully inoculated against COVID-19, thereby reducing the possibility that he will be infected. That said, the nature of prisons means that the virus can spread quickly and that inmates have little ability to protect themselves

from the virus. In short, the Court is aware of the risk that Mr. Schoonover faces from COVID-19 and has given it appropriate weight in its consideration of the § 3553(a) factors.

Also weighing in Mr. Schoonover's favor, he has served nearly 20 years for his crimes, which represents a very significant sanction. Mr. Schoonover has also earned his GED and completed several classes while in BOP custody, including drug education. Dkt. 22-4. Mr. Schoonover reports that he been certified to work on roofs and as a production technician, building trades technician and an automobile salesman. Dkt. 22 at 20. Mr. Schoonover is on the waiting list for UNICOR and currently works as a unit orderly. Dkt. 22-4. The Court also recognizes that Mr. Schoonover's childhood was extremely troubled and traumatic and that he appears to have suffered from a serious substance abuse problem at the time of his crimes. Dkt. 22 at 2. Mr. Schoonover has also submitted letters of support from his mother and his son, suggesting that his family could provide some stability if he were released. Dkt. 22-6. Finally, the Court acknowledges that, while Mr. Schoonover has some prior convictions, there is nothing else in his criminal history of equal magnitude to the crimes he committed in these cases. Dkt. 27-1 at 12–14.

Nonetheless, other facts weigh heavily against Mr. Schoonover's request for release. Specifically, the nature and circumstances of Mr. Schoonover's offenses are extremely serious. He committed three armed robberies and brandished a gun, terrifying and endangering the people in the banks at the time. *See, e.g.*, dkt. 27-1 at 7 (victim impact statement). When confronted by law enforcement, Mr. Schoonover and his brother led them on an extended chase, putting the lives of others at risk. In addition, given Mr. Schoonover's history of substance abuse, the Court is troubled that he declined the BOP's residential drug abuse program in 2020. *See* dkt. 22-4 at 1. Mr. Schoonover also has a disciplinary infraction from 2020 for "assaulting w/o serious injury." Dkt. 22-5. And the Court cannot overlook that Mr. Schoonover agreed to a binding plea agreement, in

exchange for the government's forbearance on bringing other charges against him with respect to the circumstances surrounding the matters charged in both of the above-captioned cases. The Court infers a possible uncharged count could have been brought under 18 U.S.C. § 924(c) and exposed Mr. Schoonover to an additional mandatory consecutive term of imprisonment.

Furthermore, the BOP considers Mr. Schoonover to be at high risk for recidivism. Dkt. 22-4 at 2. Defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Violent offenders recidivated at a higher rate than non-violent offenders in every age group at the time of release from prison, and the gap between the two groups widens as age at release increases . . . . Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders.").[6] This pattern holds true even as defendants age: "Recidivism rates for robbery offenders increased until reaching age 50 at the time of release (rising from 66.2% for those released under the age of 26 to 72.2% for those released at age 41 through 50."). *Id.* at 27. Although Mr. Schoonover is making strides at reforming himself, his risk of recidivism remains high.

Finally, the Court has consistently denied motions for compassionate release from defendants, including Mr. Schoonover's brother, who were convicted of armed robbery, even when they suffered from medical conditions that increased their risk of experiencing severe COVID-19 symptoms. In so doing, the Court has emphasized the severity of the crime and the risk of recidivism. *See, e.g.*, *United States v. Schoonover*, Nos. 1:01-cr-00156-JMS-TAB-01, dkt. 50 (S.D. Ind. May 6, 2021), 1:02-cr-00014-JMS-MJD-02, dkt. 37 (S.D. Ind. May 6, 2021); *United States v.*

---

[6]This report is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (last visited July 9, 2021).

*Curry*, No. 2:06-cr-11-JRS-CMM-1, dkt. 77 (S.D. Ind. May 20, 2020); *United States v. Clark*, No. 3:15-cr-28-RLY-CMM-1, dkt. 85 (S.D. Ind. Aug. 14, 2020); *United States v. Cox*, No. 1:16-cr-203-SEB-DKL-1, dkt. 65 (S.D. Ind. Feb. 10, 2021).

In light of the above, the Court finds that releasing Mr. Schoonover early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes; or avoid unwarranted sentencing disparities. Certainly, the Court is sympathetic to the risks that prisoners with underlying conditions such as Mr. Schoonover face from COVID-19, but it cannot find that the magnitude of those risks warrant releasing him from incarceration at this time. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming denial of motion for compassionate release where district court found that § 3553(a) factors weighed against release despite COVID-19 risk because defendant committed serious offense and had only served one-third of sentence); *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

**III. Conclusion**

For the reasons stated above, Mr. Schoonover's motions for compassionate release, dkt. [17] in Case No. 1:01-cr-156-JMS-TAB-02 and dkts. [7] and [22] in Case No. 1:02-cr-14-JMS-MJD-01, are **denied**.

**IT IS SO ORDERED.**

Date: 7/15/2021

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel